IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
SEP 19 2012

Arthur Lee Sanford, )
    Plaintiff, )
     )
v. ) 1:11cv348 (LMB/JFA)
     )
Dr. N. Kolongo, et al., )
    Defendants. )

## MEMORANDUM OPINION

Arthur Lee Sanford, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that he suffered deliberate indifference to his serious medical needs at the Hampton Roads Regional Jail ("HRRJ"). The matter is presently before the Court on the Motion for Summary Judgment filed jointly by defendants Nsekenene Kolongo, M.D., Nurse Valerie Gaskins, and Nurse Lachean Petty on May 29, 2012. Defendants provided plaintiff with notice and an opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On June 5, 2012, plaintiff filed a Motion to Dismiss defendant's motion on the ground that it was filed outside the time specified in the Court's Order of May 14, 2012 granting defendants' motion for extension of time. Defendants filed a response opposing plaintiff's Motion on June 11. On June 18, 2012, plaintiff filed a response to the Motion for Summary Judgment, to which defendants filed a reply. On July 13, plaintiff submitted an Opposition Response to Defendants' Second Reply Memorandum. For the reasons that follow, defendants' Motion for Summary Judgment will be granted, and final judgment will be entered in their favor. Plaintiff's Motion to Dismiss the summary judgment motion will be denied.

# I. Background

## A. Plaintiff's Allegations

Briefly, plaintiff alleges in the Amended Complaint that upon his arrival at HRRJ on August 26, 2010, he brought with him medical records showing that he was receiving an antibiotic, Bactrim, for a chronic staph infection. Plaintiff advised the intake medical personnel and Dr. N. Kolongo that the Bactrim had been prescribed after plaintiff was seen by Dr. Daniel Kluger, an infectious disease specialist in Newport News. Am. Compl. at 4. Nonetheless, Dr. Kolongo allegedly stopped plaintiff's antibiotic treatment for approximately forty (40) days, and as a result plaintiff's infection "spread throughout [his] body," his elbow became swollen, and he was left in "severe pain."[1] Id. After plaintiff filed several grievances, he was transported to Dr. Kluger's office on September 28, and Dr. Kluger prescribed Bactrim as well as pain medication. Plaintiff filed additional grievances on October 1, October 6 and October 12 stating he was not receiving the medications prescribed by Dr. Kluger, allegedly because Infectious Disease Nurse Gaskins intentionally delayed ordering the medications or giving them to plaintiff. By the time plaintiff received the Bactrim, his body had become resistant to it, and he suffered an allergic reaction that caused sores and permanent scarring. Plaintiff filed an emergency grievance on November 7 to see Nurse Gaskins, but he received no response. He then filed emergency grievances on November 11, November 15 and November 17 requesting to be seen again by Dr.

---

[1] Exhibits submitted by plaintiff in support of his response to defendants' reply to his Motion for Summary Judgment indicate that plaintiff sustained burns to his face, chest and upper extremities in a house fire in 2004, and he now has prosthetic elbow joints. In Encounter Notes, Dr. Daniel Kean, to whom plaintiff was referred by a physician at Medical College of Virginia for evaluation of plaintiff's chronic pain, stated that plaintiff "will need removal of the r[ight] elbow prosthesis secondary to development of a[n] infection." Dkt. 25, Ex., ECF 9.

2

Kluger because his "health was rapidly deteriorating" and his pain was increasing. In a response to the November 15 grievance, Nurse Gaskins "acknowledged" plaintiff's chronic infection and the prosthetic failure in his elbows, but she failed to view or to culture the sores spreading over plaintiff's body. Am. Compl. at 6. In addition, Nurse Gaskins failed to get plaintiff's medical records from the Pain Management Center in Hampton, Virginia, which would have revealed that the dosage of pain medication plaintiff was receiving was incorrect.

On December 20, 2010, plaintiff again was transported to Dr. Kluger's office, and his antibiotic was changed to Clindamycin because he had developed an allergic reaction to Bactrim. In addition, Benadryl and skin cream were prescribed for plaintiff's itching. When plaintiff returned to HRRJ that same day, Nurse L. Petty received the new prescriptions, but plaintiff nonetheless did not receive the new medicines until January 18, 2011. In the interim, plaintiff continued to receive Bactrim. Plaintiff filed emergency grievances on December 24, 25, and 27, 2010, and on January 1, 4, and 18, 2011. Despite the fact that he had developed an abscess or boil at his elbow which caused "even more severe pain," plaintiff's situation was deemed to be "not an emergency." On January 18, 2011, plaintiff saw Dr. Alex Taylor at HRRJ, who attempted to drain plaintiff's abscess and ordered the staff nurse "immediately" to give plaintiff a dose of the Clindamycin Dr. Kluger had prescribed. Dr. Taylor allegedly observed that "it [was] inexcusable what the staff had done to" plaintiff. Am. Compl. at 7. Dr. Taylor also said that he wanted plaintiff to see him, and no one but him, again in one week. However, the medical staff made plaintiff see Dr. Kolongo about two weeks later. Plaintiff filed additional grievances on January 21 and 24 and February 3 and 20 complaining that his abscess had reappeared because he was not receiving his antibiotic in a timely manner. Plaintiff alleged that Nurse Gaskins still had

3

not taken a "simple culture" of the infection coming from his abscess, and that his body has been damaged to the point that the antibiotic may no longer be effective, since the abscess continues to reappear and he is in constant pain. Am. Compl. at 8.

B. Defendants' Motion for Summary Judgment[2]

In support of their motion for summary judgment, defendants have provided exhibits which include plaintiff's medical records from HRRJ for the time period relevant to his claim. Wilson Aff. ¶ 2. A Medical Information Transfer Form indicates that plaintiff was transferred to HRRJ from Newport News City Jail on August 19, 2010. Def. Ex. 1 at 24. The form noted that plaintiff was a burn victim and had a history of "burns, l[eft] elbow arthritis, [and] chronic staph infections." Id. The medical records attached to the form indicated that plaintiff was receiving the antibiotic Septra DS prior to his transfer to HRRJ. Id. at 27.

A culture sample ordered by Dr. Kolongo was taken from plaintiff on August 26, 2010. The lab report indicated the presence of e-coli. Def. Ex. 1 at 23.

Defendants have supplied plaintiff's Medical Administration Records ("MAR") for his incarceration at HRRJ from August, 2010 through May, 2011. These records document the

---

[2] By Order dated April 4, 2012, defendants' joint Motion to Dismiss the amended complaint was denied without prejudice to their ability to file a properly-filed Motion for Summary Judgment within thirty (30) days. Dkt. 26. On May 3, 2012, defendants moved for an extension of time, citing their need to procure plaintiff's medical records and affidavits. By Order dated May 14, defendants' motion was granted, and they were directed to submit their Motion for Summary Judgment within fourteen (14) days. Dkt. 30. The summary judgment motion and supporting memorandum were filed on May 29, 2012. Dkt. 31 - 32. Plaintiff thereafter moved to dismiss the defendants' motion, arguing that it was filed outside the time permitted in the Order of May 14. Dkt. 34. However, as defendants correctly point out in their reply, the fourteenth day from the date of the Order was May 28, the Memorial Day holiday, so pursuant to Fed. R. Civ. P. 6(a)(1)(C), defendants could timely file their Motion for Summary Judgment until the end of the following day. Dkt. 35. As the Motion for Summary Judgment was filed on May 29, plaintiff's Motion to Dismiss it as untimely filed will be denied.

medications that plaintiff received by listing the medications he was given, the date each was prescribed, and the dates they were administered to plaintiff. Gaskins Aff. ¶ 6.

Plaintiff's August, 2010 MAR reflects that plaintiff was prescribed Bactrim DS, an oral antibiotic, for a period of thirty (30) days. Def. Ex. 1 at 1. Plaintiff received Bactrim DS every day between August 19 and August 26, 2010. Id. On August 27, 2010, plaintiff was prescribed Septra DS, which he received daily from August 27 until August 31, 2010. Def. Ex. 1 at 2. Septra DS is the same antibiotic as Bactrim DS. Gaskins Aff. ¶ 7. Plaintiff continued to receive Septra DS each day from September 1 through September 20, 2010, when the prescription ended. Def. Ex. 1 at 4. During that same period, plaintiff also received 500 mg of the antibiotic Ciprofloxacin, known as "Cipro," twice a day. Gaskins Aff. ¶ 8.

In October, 2010, plaintiff again was prescribed Bactrim DS. Def. Ex. 1 at 5. The MAR for that month shows a number of days where plaintiff "missed" the administration of Bactrim. Def. Ex. 1 at 5. However, the "missed" administrations do not mean that plaintiff failed to receive his medication at all on those days; rather, the notation of a "missed" administration means that plaintiff missed the 7:00 a.m. pill pass nurse. Gaskins Aff. ¶ 9. If an inmate misses the pill pass nurse and so does not receive his medication that way, a nurse is available twenty-four hours a day to administer medications. Thus, on days when plaintiff "missed" the pill pass nurse, he could obtain Bactrim from the on-call nurse. Id. Plaintiff's MAR for October, 2010 also indicates that he was prescribed Vicodin hydrocodone, a pain medication, for thirty (30) days beginning on October 7, 2010. This medication also was available at any time from the on-call nurse. Gaskins Aff. ¶ 10.

Plaintiff's MAR for November, 2010 shows that he was prescribed Sulfatrim DS, which

5

he received daily from November 1 through November 18. Def. Ex. 1 at 6 - 7. Sulfatrim DS is a form of the antibiotic Bactrim DS. Gaskins Aff. ¶ 11. On November 19, plaintiff was issued his Sulfatrim DS as "KOP," an abbreviation for "keep on person." Id.; Def. Ex. 1 at 7. Thus, on November 19, plaintiff began receiving thirty-day supplies of Sulfatrim DS to keep on his person and administer to himself. Plaintiff signed a release requesting to be part of the KOP program on August 19, 2010. Def. Ex. 1 at 21. Plaintiff also was prescribed Vicodin pain medication from November 11 though November 13, and again from November 19, 2010 through February 16, 2011. Def. Ex. 1 at 6 - 7.

Plaintiff's MAR for December, 2010 reveals that plaintiff continued to receive both Sulfatrim DS and Vicodin throughout the entire month. Def. Ex. 1 at 8 - 9.

In January, 2011, plaintiff received Sulfatrim DS KOP until the prescription was discontinued on January 21. Def. Ex. 1 at 11 - 12. Beginning on January 20, plaintiff was prescribed the antibiotic Clindamycin, which he also received KOP. Def. Ex. 1 at 11. Plaintiff also continued to receive pain medication throughout this period. Def. Ex. 1 at 12.

Plaintiff's MAR's for February, March and April of 2011 indicate that he continued to receive Clindamycin KOP as well as pain medication throughout those months. Def. Ex. 1 at 13 - 20.

Defendants have also supplied a copy of a report by Dr. Daniel Kluger, the infectious disease specialist to whom plaintiff was taken for evaluation. Dated December 20, 2010, the report states in relevant part:

> HISTORY OF PRESENT ILLNESS: Mr. Sanford returns today for follow up evaluation of septic arthritis. Since last seen, the patient states he has developed a diffuse pruritic rash. No fevers, chills or

6

sweats. No nausea, vomiting, diarrhea. No other significant complaints.

MEDICATIONS: Bactrim double strength daily/Prinivil/HCTZ.

\* \* \*

ASSESSMENT/PLAN:
Diffuse rash: Is it possible this may be related in part to Prinivil as this medication has been substituted for Diovan.[3] Would consider discontinuation of this drug and assessing effect. Ultimately, though Bactrim remains the most likely cause.

Presently, Bactrim is being administered as an oral suppressive antimicrobial therapy for the MRSA that has been isolated from his prosthetic left elbow infection. If his rash does not improve with Prinivil, would consider changing Bactrim to Erythomycin once daily in hopes to suppress this infection further. MRSA has been isolated in the past.

This patient will require lifelong oral suppressive antimicrobial therapy as he likely has persistent device related infection.

Def. Ex. 1 at 22.

C. Plaintiff's Response

Plaintiff filed a response to defendants' motion pointing out what he deems to be disputed facts. The response was neither notarized nor filed under penalty of perjury. Essentially, plaintiff attempts to discredit the accuracy of the medical records supplied by defendants. For example, plaintiff asserts that two of the entries on his August MAR "contradict" each other because they reflect different signatures for August 31, 2010. Plf. Resp. at 5. Plaintiff states that it appears that the word "Septra" was entered on his MAR "by someone other than the person entering the other medications on those pages" because the letters "R" and "r" are "distinctly different." Id. at

---

[3]According to information provided by the U. S. National Library of Medicine available at www.nlm.nih.gov, Prinivil or Lisinopril is used to treat high blood pressure and heart failure.

6. Plaintiff asserts that he did not receive his pain medication, Vicodin, in a timely manner because, contrary to defendants' statement regarding the constant availability of an on-call nurse to administer medications, "This is only true for Medical Housing Unit inmates ..." Id. at 9. Thus, if the pill pass nurse did not "readily come at the 1500 hour," plaintiff had to notify the unit officer on duty, who in turn had to notify the medical department, and then plaintiff had to "pray" that the pill pass nurse assigned to his unit was available and willing to return to administer his medication. According to plaintiff, "[m]ost of the time, they will not come back...." Id.

Plaintiff has also supplied copies of medical records documenting his admission to MCV Hospital in August, 2011, where he underwent removal of his left elbow prosthesis and placement of an antibiotic spacer to suppress infection. According to plaintiff, this meant that he went without the use of left arm for approximately eight (8) months. Plf. Resp. at 13.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create

disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

To succeed on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). To establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff must satisfy two distinct elements. First, he must show a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an

untreated broken arm is sufficiently serious). Second, he must demonstrate that defendants exhibited deliberate indifference to that medical need "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also, Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Importantly, a prisoner's disagreement with medical personnel over the course of his treatment will not support an Eighth Amendment cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). Thus, "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761 (8th Cir. 1996).

Turning to the instant case, a condition is sufficiently serious to merit constitutional protection if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Defendants do not dispute that plaintiff's condition here meets that test. Accordingly, the first element of an Eighth Amendment claim is satisfied. However, plaintiff's claim founders on the second prong of the test, because the uncontroverted material evidence shows that defendants were not deliberately indifferent to

his condition. Instead, the medical records supplied by defendants demonstrate that plaintiff was received at HRRJ with a medical history of burns, arthritis, and chronic infection related to his prosthetic left elbow. Def. Ex.1 at 24 - 27. Plaintiff continued to receive Septra antibiotic for his first month at HRRJ, until the prescription expired on September 20, 2010. Id. at 1 - 3.[4] For a week during that period he also received a second antibiotic, Ciprofloxacin. Id. Thus, plaintiff's allegation that was denied his antibiotic medication by HRRJ staff for forty (40) days beginning on August 26, 2010, Am. Compl. at 4, is belied by the medical records.

Plaintiff was issued a new prescription for Bactrim DS on October 7, 2010, along with pain medication, and he continued to receive those medications until January 1, 2011. Def. Ex. 1 at 5 - 12. Plaintiff's allegation that he was not given the medication directed by infectious disease specialist Dr. Kluger thus is inaccurate, because Dr. Kluger's report stated that plaintiff's allergic rash might have been due to the Prinivil plaintiff was also receiving, and that his treatment with Bactrim antibiotic should continue. Def. Ex. 1 at 22. The medical staff at HRRJ complied with those directions. Def. Ex. 1 at 9 - 12.

After January 20, 2011, plaintiff began to receive a new antibiotic, Clindamycin, pursuant to the orders of an HRRJ physician who is not a party to this action. Def. Ex. 1 at 12. The administration of this antibiotic continued through April, 2011. Id. at 12 - 19. Significant here, this antibiotic was prescribed to plaintiff "KOP," or keep on person, such that plaintiff was responsible for taking that medication on his own. Gaskins Aff. ¶ 11. Thus, plaintiff's allegation

---

[4]Plaintiff's allegation that he had been receiving Bactrim DS at his previous place of incarceration is not borne out by the medical records, which show instead that he was receiving Septra DS prior to his transfer to HRRJ. Def. Ex.1 at 27.

that he did not receive his Clindamycin "in a timely manner," Am. Compl. at 8, if true, cannot have been the fault of anyone but plaintiff himself.

Under these circumstances, the defendants have met their burden to show that they are entitled to judgment as a matter of law on plaintiff's claim of deliberate indifference. Celotex, 477 U.S. at 323. Specifically, the medical records and other exhibits provided by defendants demonstrate that they acted with neither "actual intent or reckless disregard" of plaintiff's serious medical need. Miltier, 896 F.2d at 851. Plaintiff's attempt to offer evidence to rebut that conclusion falls short, because in essence he does no more than demonstrate his disagreement with the course of his treatment, and in cases such as this a "Plaintiff's disagreement with Defendants' medical judgment does not create a material issue of fact." Pettis v. Williams, 2008 WL 4844127 at *5 (D. Neb. Nov. 5, 2008). Consequently, defendants are entitled to the summary judgment they seek.

### IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted, and summary judgment will be entered in their favor. Plaintiff's Motion to Dismiss defendant's motion will be denied. An appropriate Order and Judgment shall issue.

Entered this 19th day of September 2012.

Alexandria, Virginia

/s/ Leonie M. Brinkema
United States District Judge